UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

WELLMON McCALLIE,

                          Petitioner,                    **No. 07-CV-0473(VEB)**
      -vs-                                           **DECISION AND ORDER**

THOMAS POOLE,

                          Respondent.
_____

## I.      Introduction

*Pro se* petitioner Wellmon McCallie ("McCallie" or "Petitioner") seeks a writ of habeas corpus under 28 U.S.C. § 2254 on the basis that he is being unconstitutionally held in state custody. McCallie, a persistent felony offender, is currently serving a 20-year-to-life sentence pursuant to a judgment of conviction entered against him in New York State Supreme Court (Erie County) following a jury trial on one count of robbery in the first degree (New York Penal Law § 160.15(3)) and one count of criminal possession of a weapon in the third degree.

The parties have consented to final disposition of this matter by a magistrate judge pursuant to 28 U.S.C. § 636(c)(1).

## II.     Factual Background and Procedural History

### A.     The Trial

Vasily Kondatuyk ("Kondatuyk"), the manager of the meat department at a grocery store in the City of Buffalo, testified that on the morning of October 24, 2003, Petitioner came to his counter and asked for steak. Kondatuyk gave him about $36.00 worth of meat. Petitioner then left the store without paying for it. Kondatuyk ran after Petitioner, who had gotten into the

passenger seat of a car in the parking lot. Kondatuyk stood in front of the car but it kept going, so he jumped onto the hood in an attempt to stop the thief. Finally, the car stopped.

By that point, Timothy Wagner ("Wagner"), the store owner, had approached the group. McCallie got out of the car. Wagner and Kondatuyk told McCallie to give back the meat. McCallie, however, had different plans: he took out a knife and waved it at them before running off down the street with the meat.

A fairly lengthy chase ensued as Kondatuyk pursued McCallie on foot, down the street through backyards and over fences. The chase ended when McCallie arrived a fence too high for him to scale. Kondatuyk demanded that McCallie return the meat and reached out his hand to grab it. McCallie, but when he reached for it, the defendant threw wood at him and cut his right hand with a knife (28- 30).

Wagner, the store owner, related that when he arrived on the scene, he saw his employee on the hood of a car. The driver pulled over and said he did not know the meat thief (McCallie). Wagner testified that McCallie got out of the car and began brandishing a knife at them. McCallie refused to drop the meat and ran away.

When Kondatuyk returned to the store, he showed Wagner the cut on his hand received from McCallie. Wagner provided first aid to Kondatuyk.

Officer Greg Kwiatkowski of the Buffalo Police Department responded to the 911 call. Upon arrival at where Kondatuyk had McCallie cornered against the fence, he saw McCallie throw a dolly cart at Kondatuyk. Officer Kwiatkowski chased McCallie and grabbed him. McCallie announced he had a gun and he and Officer Kwiatkowski struggled. A second police officer arrived and recovered a knife from McCallie, which he testified was in McCallie's hand.

Petitioner admitted he stole the steaks from the store, but said he never had a knife and that he left the meat in the car before running away. He claimed that the store employee hit him with a stick and that the police officer beat him.

On February 2, 2007, the Appellate Division unanimously affirmed the judgment of conviction. *People v. McCallie*, 37 A.D.3d 1129 (App. Div. 4th Dept. 2007). Permission to appeal to the New York Court of Appeals was denied on May 7, 2007. *People v. McCallie*, 8 N.Y.3d 987 (N.Y. 2007).

### B.        The Federal Habeas Proceeding

In his petition, McCallie raised four grounds for relief. Respondent answered the petition acknowledging that they had been exhausted on direct appeal, but arguing that several of the claims were procedurally defaulted. Respondent also argued that none of the claims has merit. Petitioner then filed a reply memorandum of law in which he, among other things, asserted new claims not raised in the initial petition. Respondent filed a motion to dismiss these claims (Docket No. 14) on the basis that they were unexhausted. Petitioner filed a response (Docket No. 17) and a brief (Docket No. 18) in opposition to Respondent's motion to dismiss.

The only two new claims that this Court found in Petitioner's reply papers were (1) trial counsel was ineffective in failing to question a juror's ability to be impartial and (2) the trial court failed to hold a hearing on McCallie's request for substitute counsel. Keeping in mind that *pro se* petitioners are afforded considerable latitude in their pleadings, the Court will deem the two new claims raised in the response papers as being part of the petition.  The first claim is unexhausted but procedurally defaulted, and must be dismissed. The second claim is exhausted, having been raised on direct appeal. It is without merit, however, as discussed below.

The claims raised in the petition itself are also without merit and do not form a basis for habeas relief. For the reasons that follow, then, the petition is dismissed. Respondent's motion to dismiss is denied as moot.

## III.    Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a state court conviction "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *Id.* § 2254(d)(2); *see also Williams v. Taylor*, 529 U.S. 362 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not *dicta*) of the Supreme Court existing at the time of the relevant state-court decision. *Williams*, 529 U.S. at 412.

## IV.    Analysis of the Claims Raised in the Petition

### A.    Ground One: The trial court's *Sandoval*[1] ruling was erroneous and prejudicial, and denied Petitioner his due process right to a fair trial. (Petition, ¶22(A))

In Petitioner's direct appeal, he claimed that the trial court's *Sandoval* ruling allowing the prosecutor to cross-examine him about certain prior convictions and bad acts was unfairly

---

[1]    *People v Sandoval*, 34 N.Y.2d 371 (N.Y. 1974). As the Second Circuit has noted, "'[i]n New York state courts a defendant may request a preliminary hearing, known as a *Sandoval* hearing, to determine whether, if he elects to testify, his prior criminal record may be used to impeach his credibility.'" *Greiner v. Wells,* 417 F.3d 305, 310 n. 1 (2d Cir. 2005) (quoting *Norde v. Keane*, 294 F.3d 401, n. 1 (2d Cir. 2002)).

prejudicial. The Appellate Division ruled this claim was unpreserved for appellate review because he failed to object to the trial court's ultimate *Sandoval* ruling. *People v. McCallie*, 37 A.D.3d at 1130 (citing, *inter alia*, *People v. McMillon*, 32 A.D.3d 1300, 821 N.Y.S.2d 531.

Respondent argues that the Appellate Division relied upon an adequate and independent state ground to dismiss the *Sandoval* claim, and therefore it is procedurally defaulted. The Court agrees with Respondent.

The Supreme Court has held that claims underlying a habeas petition may be procedurally barred from habeas review if they were decided at the state level on adequate and independent procedural grounds. *Coleman v. Thompson*, 501 U.S. 722, 729-33 (1991). The procedural bar applies when a state court's decision contains a "plain statement" that it is relying on an "adequate" state law as an "independent" basis for denying the claim. *Id.* at 722, 729. There is no question that the Appellate Division explicitly invoked and actually relied upon New York's contemporaneous objection rule (C.P.L. § 470.05(2)) as an independent basis for its disposition of the *Sandoval* claim; it did not rule in the alternative on the merits of the claim. Furthermore, C.P.L. § 470.05(2) was "'adequate' to support the judgment" because that contemporaneous objection is "firmly established and regularly followed," *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991), by the New York courts to deny similar claims.

To avoid the preclusive effect of this procedural default, McCallie must demonstrate cause for the default and actual prejudice, or that the failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. Cause may be established by "showing that the factual or legal basis for a claim was not reasonably available to counsel . . . or that 'some interference by officials' . . . made compliance impracticable . . . [or that] the

procedural default is the result of ineffective assistance of counsel." *Murray v Carrier*, 477 U.S. 478, 488 (1986). To show prejudice, a habeas petitioner must show "not merely that the errors at his trial created a  possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v Frady,* 456 U.S. 152, 170 (1982).

As Respondent argues, defense counsel's representation concerning the failure to preserve this claims cannot be considered cause for the default because Petitioner did not exhaust this issue in the state court. *Murray v Carrier*, 477 U.S. at 489. On the record before this Court, Petitioner cannot establish either cause or prejudice to excuse his default. Furthermore, Petitioner cannot avail himself of the  "fundamental miscarriage of justice"  exception because this is not "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." 477 U.S. at 496. Consequently, the *Sandoval* claim is dismissed as subject to an unexcused procedural default.

### B.    Ground Two: The verdict was against the weight of the credible evidence and unsupported by legally sufficient evidence.

On direct appeal, the Appellate Division held that McCallie's contention that the conviction is not supported by legally sufficient evidence was not preserved for review. *People v. McCallie*, 37 A.D.3d at 1130 (citing *People v. Gray*, 86 N.y.2d 10, 19 (N.Y. ). The Appellate Division also ruled on the merits that the verdict was not against the weight of the evidence, notwithstanding minor discrepancies in the accounts of the prosecution's witnesses. *Id.* (citations omitted).

**1.      The weight-of-the-evidence claim is not cognizable on habeas review.**

McCallie's claim regarding the weight of the evidence is not a federal constitutional claim cognizable in this habeas proceeding. A "weight of the evidence" claim derives from New York Criminal Procedure Law ("C.P.L.") § 470.15(5), which permits an appellate court in New York to reverse or modify a conviction where it determines "that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence." N.Y. CRIM. PROC. LAW § 470.15(5). A "weight of the evidence" argument is a pure state law claim grounded in the criminal procedure statute. *People v. Bleakley*, 69 N.Y.2d 490, 495, 515 N.Y.S.2d 761, 508 N.E.2d 672 (N.Y.1987) (weight of the evidence claim is based on court's factual review power; sufficiency of evidence claim based on the law); *accord*, *e.g.*, *People v. Romero*, 7 N.Y.3d 633, 642-43 (N.Y. 2006). On the other hand, a legal insufficiency claim is based on federal due process principles. *Id.*; *see also Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

Because McCallie's weight of the evidence claim implicates only state law, it is not cognizable in this federal habeas proceeding. *See* 28 U.S.C. § 2254(a)  (permitting federal habeas corpus review only where the petitioner has alleged that he is in state custody in violation of "the Constitution or a federal law or treaty"); *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990) (habeas corpus review is not available where there is simply an alleged error of state law); *Ex parte Craig*, 282 F. 138, 148 (2d Cir.1922) (holding that "a writ of habeas corpus cannot be used to review the weight of evidence . . ."), *aff'd*, 263 U.S. 255, 44 S.Ct. 103, 68 L.Ed. 293 (1923).

Therefore, it is dismissed as not cognizable. *Accord*, *e.g.*, *Garrett v. Perlman*, 438 F.

Supp.2d 467, 470 (S.D.N.Y.2006) (dismissing claim that conviction was against the weight of the evidence; such a claim is not a basis for habeas relief but presents only an error of state law, for which habeas review is not available); *Feliz v. Conway*, 378 F. Supp.2d 425, 430 n. 3 (S.D.N.Y.2005); *Douglas v. Portuondo*, 232 F. Supp.2d 106, 116 (S.D.N.Y.2002); *Correa v. Duncan*, 172 F. Supp.2d 378, 381 (E.D.N.Y.2001).

## 2.   The insufficiency-of-the-evidence claim is procedurally defaulted.

Respondent argues that the claim is procedurally defaulted due to the Appellate Division's reliance on a state procedural rule as an independent and adequate ground for its judgment. I agree with Respondent. The rule requiring a trial order of dismissal *specifically* directed at the alleged infirmities in the prosecution's proof is one that is firmly established and regularly followed by the courts of New York state. *E.g.*, *Garvey v. Duncan*, 485 F.3d 709, 714, 716 (2d Cir.2007). Here, trial counsel made a motion for a trial order of dismissal on the basis that there was no proof that a deadly weapon was involved; on appeal, however, appellate counsel argued that the evidence was insufficient to demonstrate that a larceny had been committed. Thus, the theory of legal insufficiency was different at the trial court and on appeal.

Under the circumstances, then, the Appellate Division's reliance upon *People v. Gray* to dismiss McCallie's insufficiency-of-the evidence claim due to want of specific objection was an adequate and independent state ground, and therefore habeas review is procedurally barred unless McCallie can demonstrate either (1) cause for the default and prejudice attributable thereto; or (2) that the failure to consider the federal claim will result in a fundamental miscarriage of justice (i.e., a constitutional error has probably resulted in the conviction of someone who is actually innocent). *Coleman v. Thompson*, 501 U.S. at 750. For the reasons stated above in this Decision

and Order, McCallie cannot fulfill the "cause and prejudice" test or the requirements for the "fundamental miscarriage of justice" exception. Therefore, this claim is dismissed as subject to an unexcused procedural default.

**C.    Ground Three: Trial counsel failed to provide constitutionally effective assistance. (Petition, ¶22(C))**

**1.    Overview of the Claim and the *Strickland* Standard**

McCallie contends that trial counsel was ineffective in failing to object to the discharge of a sworn juror, failing to object to instances of misconduct in the prosecutor's summation; and failing to request a hearing concerning whether the jurors saw McCallie in shackles and whether a juror had spoken to the prosecutor. These claims were raised on direct appeal, and the Appellate Division concluded that after viewing the evidence, the law, and the circumstances of this case, in totality and as of the time of the representation, McCallie received meaningful representation. *People v. McCallie*, 37 A.D.3d at 1130 (citations omitted).

Application of the New York state standard for evaluating ineffective assistance claims, *e.g.*, *People v. Baldi*, 54 N.Y.2d 137, 146 (N.Y. 1981), is not "contrary to," 28 U.S.C. § 2254(d)(1), the principles set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which has been deemed to be the "clearly established" Supreme Court law for evaluating claims of ineffective assistance of trial counsel. *Rosario v. Ercole*, 601 F.3d 118, 126 (2d Cir.2010) (citations omitted).

In order to prevail on a Sixth Amendment ineffectiveness claim under *Strickland*, a defendant must prove (1) that trial counsel's representation "fell below an objective standard of reasonableness" measured under "prevailing professional norms," *Strickland*, 466 U.S. at 688,

and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. In *Strickland,* the Supreme Court said that "[j]udicial scrutiny of a counsel's performance must be highly deferential" and that "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." 466 U.S. at 689. Thus, a defendant must overcome the "presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). A court need not "approach the inquiry in the same order or even [ ] address both components" if the defendant fails to meet either prong of this test. *Strickland*, 466 U.S. at 697.

With relief under the "contrary to" clause not available to Petitioner under these circumstances,  the remaining issue, then, is whether Petitioner can obtain relief on the ground that the state court's adjudication of his claim involved an "unreasonable application" of *Strickland*. The Second Circuit has stated that the level of "unreasonableness" that must be shown under 28 U.S.C. § 2254(d)(1) "falls somewhere between merely erroneous and unreasonable to all reasonable jurists." *Brown v. Alexander*, 543 F.3d 94, 100 (2d Cir.2008) (quoting *Overton v. Newton*, 295 F.3d 270, 277 (2d Cir.2002)). There must be "some increment beyond error is required," although it "need not be great; otherwise habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Eze v. Senkowski*, 321 F.3d 110, 121 (2d Cir. 2003) (internal citations omitted).

> ### 2.      Analysis of Trial Counsel's Alleged Errors
>
> #### a.      Failure to Object to Discharge of Sworn Juror

McCallie contends that trial counsel should have objected when a sworn juror was discharged, allegedly in violation of C.P.L. §270.35.[2] The question of whether or not the statutory standard was met is irrelevant here, since it was not unreasonable for defense counsel to agree to the discharge of this particular juror.

The juror in question (number 34, Wendy Mettlefehldt) (see 201, 207-208, 237) informed the court that another teacher where she worked was called away the day before because her mother was dying of cancer (245). The school year had just started (246-247). Her employer would apparently have great difficulty in finding someone to teach the unique math course that only the juror and one other teacher teach (246; see also 247 [there was no replacement "right now"]).

The juror stated that it would "bother" her not to be at work for the few days that the trial lasted (246). She also stated that there might be a chance that her concentration would be "affected" by the issue (247). When asked by the court whether arrangements could be made, in light of the relatively short trial to come, the juror was ambiguous and just repeated her situation (247). It is true that It was never established that absolutely no alternative existed. Both parties consented to the court discharging this juror (246-249). Juror alternate number one was placed in Mettlefehldt's spot (249-250).

The record indicates that she informed the court, prior to the commencement of proof,

---

[2]        Pursuant to C.P.L. § 270.35 (1), "if at any time after the trial jury has been sworn and before the rendition of its verdict . . . the court finds, from facts unknown at the time of the selection of the jury, that a juror is grossly unqualified to serve in the case ..., the court *19 must discharge such juror." This provision also permits discharge of the juror where she is (1) "unable" to continue because of "illness or other incapacity" or (2) "unavailable" for any reason.

that it was difficult to be away from work because her fellow employee who could substitute for her was unavailable and that it would bother her to be away from her job. The juror stated that her concentration on the case could be affected. Defense counsel expressed the opinion that he did not think the juror would be focusing on the case at all, and that he preferred that she be replaced by an alternate juror. As Respondent argues, defense counsel's assessment of the situation was reasonable as it obviously would be preferable to have a juror who would be able to concentrate on the proof.

### b.      Failure to Request *Voir Dire* of Jurors

McCallie cannot demonstrate that he was prejudiced by trial counsel's failure to ask that the juror be subject to *voir dire* about two separate incidents involving two of the jurors.

### 1.      Petitioner Possibly Being Seen in Handcuffs

During a break in jury selection, McCallie may have been seen in handcuffs by an already sworn juror who was walking in the hallway outside of the courtroom. *See* JS.235-236.[3] A courtroom deputy, not under oath, indicated McCallie was not in handcuffs. McCallie contended that defense counsel was ineffective in choosing not to request a hearing on the issue. The relevant colloquy is set forth below:

> [Assistant District Attorney]: There is just one issue, one of the guys, number 12, was standing outside. Bob [Defense counsel, Robert Johnson] just mentioned it earlier to me. He was standing outside when Mr. McCallie came up.
>
> [Defense counsel]: I don't know if he saw–let me tell you what happened. I saw him running out and I was with Mr. McCallie coming in. Now, I don't know if he had been out long enough to see the procedure that we follow out there with the cuffs or whatever. And I just sort of brought that up. And I–maybe we should just talk to him briefly. I don't want to taint anything by asking him or anything like

---

[3]      Numerals preceded by "JS." refer to pages from the transcript of jury selection.

that, you know what I mean. I don't want to give him the idea–

[The Court]: Do you want to ask him to come in now and–

[Defense counsel]: Yes. Let me just ask him.

[The Court]: Okay. Could we ask–we need juror number 12 for a second. Would you get juror number 12. No problem.

[Defense counsel]: I'm not going to ask was he cuffed–

[Court deputy]: He was uncuffed when we brought him from the bathroom.

[Defense counsel]: All right. You saw that, Bill [i.e., the courtroom deputy]?

[Court deputy]: Yes. The cuffs were off.

[Defense counsel]: All right. Okay, thank you.

JS.235-236. The prospective jurors were then brought back in. Defense counsel did not voir dire Juror Number 12.

Significantly, Petitioner never claimed he was in handcuffs at the time. Contrary to Petitioner's claim, there was nothing ambiguous in this exchange. The prosecutor was mentioning what defense counsel,"Bob" had told him. The deputy whom defense counsel addressed was "Bill." Understandably, defense counsel was hesitant to ask the juror directly, for fear of needlessly drawing attention to the incident. It was not objectively unreasonable for defense counsel to have accepted the courtroom  deputy's statement that McCallie was uncuffed.

## 2.      Juror Communication with the Prosecutor

The trial court of course had admonished the jurors from having any contact with the attorneys outside of court during the trial proceeding. *E.g.*, J.S.48, 82, 143, 201, 202, 238. However, during a lunch break at trial, juror number twelve attempted to speak to the prosecutor,

who was walking outside of the courthouse. The prosecutor refused to do so, and reported the incident to the trial judge and defense counsel. T.2-3; S 3-7, 9-10:

> [Assistant district attorney]: [B]efore we begin, your Honor, I just want to bring to the Court's attention, while I was out at lunch, number twelve, I believe, [C.L.], he came up and tried to introduce himself to me. I explained to him that I am not allowed to talk to him, and that was the extent of the conversation. I have explained that to [defense counsel] as well.

> [The Court]: Okay, thank you.

> [Defense counsel]: Thank you.

T.2-3; see also Prosecutor's Affidavit in Opposition to C.P.L. § 330.30 Motion, ¶¶ 37-39.

Petitioner argues that trial counsel should have insisted that an inquiry of the juror be conducted; noting that after all of the court's warnings, counsel should have inquired under oath what information the juror was attempting to impart to the prosecutor. *See* S.5-7, 9-10. Petitioner's appellate counsel suggested on appeal that "[p]erhaps there were important questions the juror had that could have been answered."  Since Petitioner's claims of prejudice resulting from trial counsel's handling of this incident are, at best, speculative, he cannot succeed on a claim of ineffective assistance of trial counsel.

### c.      Failure to Object to Prosecutorial Misconduct

McCallie claims that the trial counsel was ineffective in failing to object to certain of the prosecutor's arguments on summation.

The first comment concerned the prosecutor's argument in response to McCallie's testimony that when he did something, he pleaded guilty and took responsibility for his actions. *See* T.141, 143, 161, 162, 165, 182. The prosecutor argued that in the context of this arrest, he "avoided responsibility just like he did throughout his criminal career, every single time" and

asked "what brought him back to court? Another arrest. Does that sound like someone is up there taking responsibility, being direct, being credible?" T.212.  It is well settled that "[b]y taking the stand the defendant elected to be treated as any other witness, viz. he laid his credibility open to attack." *United States v. Tomaiolo*, 249 F.3d 683, 690 (2d Cir. 1957). However, a defendant, by testifying, does not put his general character in issue. *Id.* While the prosecutor's statement bordered on being improper to the extent that it attacked McCallie's general reputation rather than his credibility, it did not substantially prejudice Petitioner. The evidence against McCallie was simply overwhelming, and there is no reasonable likelihood that the outcome of the trial would have been different had  trial counsel objected.

The prosecutor also argued during summation that the four main witnesses (the employee, the store manager, and the police officers would not perjure themselves by falsely testifying that McCallie possessing a knife.  T.215-216. During his summation, defense counsel had accused these witnesses of being liars.  T.191-192. Under similar circumstances, courts have held such comments about a witness lacking a motive to lie as not improper under the "invited response" rule. *See*, *e.g.*, *Elliott v. Kuhlmann*, No. 97 Civ.2987(PKC)(DF), 2004 WL 806986, at *13 (S.D.N.Y. Apr. 9, 2004) (citing *McKay v. McCray,* No. 00 Civ. 3930(JBW), 2003 WL 21822774, at *5 (E.D.N.Y. July 14, 2003) (habeas relief not warranted based on prosecutorial misconduct claim where, in response to defense counsel's attack on prosecution witness' credibility, prosecutor stated that prosecution witness had no motive to lie, and that no evidence had been introduced indicating that witness was lying); *Fletcher v. Salamack*, No. 89 Civ. 3604(MGC), 1989 WL 153061, at *3 (S.D.N.Y. Dec. 14, 1989) (no improper "vouching" found where prosecutor made statements in support of credibility of prosecution witnesses after defense

counsel insinuated that witnesses were lying). On the other hand, "prosecutors have been admonished time and again to avoid statements to the effect that, if the defendant is innocent, government agents must be lying." *United States v. Richter*, 826 F.2d 206, 209 (2d Cir. 1987) (citations omitted). Although the better practice would have been for trial counsel to have objected–and, of course, for the prosecutor to have framed his credibility argument in a different way–the Court's confidence in the outcome of the trial is not undermined.

### d.  Failure to Challenge Juror (Claim Raised in Reply Briefs)

Petitioner contends that trial counsel was ineffective in failing to inquire further into the ability of a juror to be fair and impartial. According to Petitioner, this juror had a close friend whose uncle and father had been murdered in a robbery. Petitioner contends that this fact called into question the juror's ability to be impartial.

This claim is unexhausted but must be deemed exhausted and also procedurally defaulted. The claims were not raised on direct appeal, and if McCallie attempted to file a C.P.L. § 440.10 motion, the court would deny the motion on the basis that the claim could have been, but unjustifiably was not, raised on direct appeal. It is true that "New York courts have held that some ineffective assistance claims are 'not demonstrable on the main record' and are more appropriate for collateral or post-conviction attack, which can develop the necessary evidentiary record." *Sweet v. Bennett*, 353 F.3d 135, 139 (2d Cir.1983) (quotation and citation omitted)). Where, however, the alleged errors that are the basis for a petitioner's ineffectiveness claim are "particularly well-established in the trial record," *id.*, federal courts in New York have held that a state court's reliance on C.P.L. § 440.10(2)(c) to dismiss such an ineffective assistance claim operates as a procedural bar to a subsequent collateral attack by means of federal habeas. *E.g.*,

*Sweet v. Bennett*, 353 F.3d at 139 (finding that C.P.L. § 440.10(2)(c) was an adequate and independent state ground barring habeas review of ineffective assistance of trial counsel claim where alleged error was particularly well-established in the trial record; trial counsel "plainly failed to object on inconsistency grounds to charging the counts in the conjunctive").

Although trial counsel should not be expected to argue his or her own ineffectiveness on direct appeal, here McCallie had new appellate counsel. In addition, McCallie filed a *pro se* supplemental appellate brief. As in *Sweet v. Bennett*, the question of whether trial counsel erred in failing to question the juror could be resolved by reference to the trial record. *See, e.g.*, *Minigan v. Donnelly*, No. 01-CV-0026A (VEB), 2007 WL 542137, at *18 (W.D.N.Y. Feb. 16, 2007) (Bianchini, M.J.) (finding that "ineffectiveness claim presents almost a paradigmatic example of a trial record that plainly establishes the basis for an argument that counsel's performance was deficient and prejudicial [since] [c]ounsel's failure to object [to the alleged errors during jury selection and jury deliberations] is preserved in the trial record") (quotation omitted).

The procedural bar that results in the constructive exhaustion of the claim also creates a procedural default. As discussed above, McCallie cannot avoid such a default because he is unable to show cause for the default and prejudice resulting therefrom, or that this Court's refusal to hear the claim would result in a fundamental miscarriage of justice. Accordingly, it is dismissed as procedurally defaulted.

### D. Ground Four: Petitioner's Confrontation Clause rights were violated at the persistent felony offender hearing (Petition, ¶22(D))

On March 21, 2005, following a hearing, McCallie was sentenced as a persistent violent

felony offender to the minimum prison term authorized by law: twenty (20) years to life. *See* N.Y. PENAL LAW §§70.08 (2), (3)(a). On appeal, McCallie contended that he was improperly found to be a persistent violent felony offender because the certificates of prior convictions and a certified fingerprint analysis were inadmissible under C.P.L. § 400.22. He also contends that the documents offered should not have been admitted under *Crawford v. Washington*, 541 U.S. 36 (2004), because they were impermissible hearsay not subject to cross-examination. "In *Crawford,* the Supreme Court held that the Confrontation Clause imposes at trial 'a *per se* bar on the admission of out-of-court testimonial statements made by unavailable declarants where there was no prior opportunity for cross-examination.'" *United States v. Martinez*, 413 F.3d 239, 243 (2d Cir. 2005) (quoting *United States v. McClain,* 377 F.3d 219, 221 (2d Cir.2004) (citing *Crawford*, 541 U.S. at 61-62)

The Appellate Division rejected the claim, holding that the documents in question were admissible pursuant to C.P.L. § 60.60. *People v. McCallie*, 37 A.D.3d at 1130 (citing *People v. Williams*, 30 A.D.3d 980, 982-83). C.P.L. § 60.60 provides as follows:

1.  A certificate issued by a criminal court, or the clerk thereof, certifying that a judgment of conviction against a designated defendant has been entered in such court, constitutes presumptive evidence of the facts stated in such certificate.

2.  A report of a public servant charged with the custody of official fingerprint records which contains a certification that the fingerprints of a designated person who has previously been convicted of an offense are identical with those of a defendant in a criminal action, constitutes presumptive evidence of the fact that such defendant has previously been convicted of such offense.

N.Y. CRIM. PROC. LAW § 60.60(1), (2). McCallie thus has not demonstrated that there was an error of state evidentiary law.

-18-

Moreover, and most important for purposes of this petition, the Appellate Division's decision was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent. "The Supreme Court in *Williams v. New York*, 337 U.S. 241, 246-51 (1949), stated that the Confrontation Clause is not applicable at sentencing proceedings because the sentencing judge must be free to consider information otherwise unobtainable." *Leon v. Conway*, No. 09 CV 5760(RPP), 2010 WL 3001709, at *9 (S.D.N.Y. July 30, 2010) (citing *Williams v. Oklahoma*, 358 U.S. 576, 584 (1959); *United States v. Garcia*, 167 Fed. App'x 259 (2d Cir. 2006); *United States v. Martinez*, 413 F.3d at 242 ("Both the Supreme Court and this Court, however, have consistently held that the right of confrontation does not apply to the sentencing context and does not prohibit the consideration of hearsay testimony in sentencing proceedings.")). Although *Williams* was decided prior to *Crawford*, *Crawford* did not overrule this aspect of the *Williams* holding. *See United States v. Martinez*, 413 F.3d at 243 ("Neither *Crawford* nor *Booker,* however, addressed the applicability of the right of confrontation to the sentencing context or the admissibility of hearsay testimony at sentencing proceedings. These cases therefore provide no basis to question prior Supreme Court decisions that expressly approved the consideration of out-of-court statements at sentencing.") (citing *Bach v. Pataki*, 408 F.3d 75, 86 (2d Cir. 2005) (noting the Supreme Court's admonition that " 'courts should [not] conclude [that] more recent [Supreme Court] cases have, by implication, overruled an earlier precedent.' ") (alterations in *Bach*) (quoting *Agostini v. Felton*, 521 U.S. 203, 237, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997)).

This claim accordingly does not provide a basis for habeas relief. *Accord, e.g., Reynoso v. Artus*, 722 F. Supp.2d 394, 401 (S.D.N.Y. 2010) ("*Crawford* did not extend the right of

confrontation to statements or reports used for the purposes of sentencing. *See United States v. Martinez*, 413 F.3d 239, 242 (2d Cir.2005) ("[T]he right of confrontation does not apply in the sentencing context."). The Trial Court thus violated no constitutional right when it considered the [mandatory pre-sentencing] report [, which indicated that he had associated with a "Security Risk Group" during his incarceration before and during trial], without affording Reynoso the opportunity to dispute the truth of its contents.").

>   **E.    Ground Five: The trial court failed to hold a hearing regarding Petitioner's request for substitute counsel.**

On direct appeal, the Appellate Division rejected McCallie's contention that the trial court erred in failing to conduct an inquiry into the allegedly irreconcilable differences between McCallie and his trial attorney because his allegations "did not establish a serious complaint concerning his relationship with defense counsel and thus did not suggest a serious possibility of good cause for substitution of counsel[.]" *People v. McCallie*, 37 A.D.3d at 1131 (citation omitted). The Appellate Division's ruling was neither contrary to, nor an unreasonable application of, clearly established Federal law.

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI.  However, "the right to choose one's own counsel is not absolute." *United States v. Jones*, 381 F.3d 114, 119 (2d Cir. 2004) (citing *Wheat v. United States*, 486 U.S. 153, 159, 108 S. Ct. 1692, 100 L. Ed.2d 140 (1988); *United States v. Locascio*, 6 F.3d 924, 931 (2d Cir. 1993)). Rather, "[t]he Sixth Amendment guarantees a criminal defendant an effective advocate, not necessarily the advocate of his or her choosing." *Id.* (citing *Wheat*, 486

U.S. at 159; *Locascio*, 6 F.3d at 931). As the Second Circuit has observed, because a defendant's right to counsel of his or her choice is "not absolute," a trial court "may require" a defendant to proceed to trial with counsel not of defendant's choosing, although it "may not compel" defendant to proceed with an attorney who is "incompetent." *United States v. Schmidt*, 105 F.3d 82, 89 (2d Cir. 1997); *see also United States v. Mills*, 895 F.2d 897, 904 (2d Cir. 1990) (holding that an indigent defendant is not entitled to counsel of his choice; rather, he is entitled only to effective representation); *United States v. Graham*, 91 F.3d 213, 217, 221 (D.C. Cir. 1996) (holding that defendant must establish prejudice to obtain reversal based on court's refusal to appoint substitute counsel). Thus, the law is clear that as a matter of both federal and state constitutional law, Welch was not entitled to appointed counsel of his own choosing, and neither was he constitutionally entitled to standby counsel of his choice. *See Mills*, 895 F.2d at 904 (defendant wanted to represent himself at trial and retain his original attorney (who had very little experience litigating criminal matters in federal court) as standby counsel; the Second Circuit held that it was within the trial court's discretion to appoint someone other than the original attorney, to act as standby counsel) (citing *United States v. Campbell*, 874 F.2d 838, 848-49 (1st Cir. 1989)).

A defendant does not have an absolute right to reject assigned counsel and demand another, once trial has begun, or on the eve of trial. *See United States v. Schmidt,* 105 F.3d 82, 89 (2d Cir.1997) ("[a] trial court may require a defendant to proceed to trial with counsel not of defendant's choosing; although it may not compel defendant to proceed with incompetent counsel"); *United State v. DiTommaso,* 817 F.2d 201, 219 (2d Cir.1987) (criminal defendant's right to counsel of choice is not absolute).  As the Second Circuit has recognized, certain limits

must be put on the reassignment of counsel "lest the right be manipulated so as to obstruct orderly procedure in the courts, or to interfere with the fair administration of justice." *McKee v. Harris*, 649 F.2d 927, 931 (2d Cir.1981) (quoting *United States v. Bentvena*, 319 F.2d 916, 936 (2d Cir.1963), *cert. denied*, 456 U.S. 917 (1982). To obtain a substitution of counsel during trial, a defendant must show "good cause, such as a conflict of interest, a complete breakdown in communication during trial, or an irreconcilable conflict which leads to an apparently unjust verdict." *United States v. Calabro,* 467 F.2d 973, 986 (2d Cir.1972); *see also Schmidt*, 105 F.3d at 89). Where a defendant voices a "seemingly substantial complaint about counsel, the court should inquire into the reason for the dissatisfaction." *McKee*, 649 F.2d at 933

Here, however, McCallie's argument that trial counsel was in collusion with the prosecutor is, quite simply, fanciful. The Appellate Division observed that the record made "clear that the crux of the differences was that defendant insisted that he should not be charged with anything greater than petit larceny, thereafter accusing defense counsel of conspiracy when defense counsel was unable to persuade the People to adopt defendant's viewpoint[.]" *McCallie*, 37 A.D.3d at 1131 (citation omitted). McCallie's complaints about his attorney were wholly unfounded; he alone was creating the alleged "irreconcilable difference" based upon his clearly unreasonable litigation position. Thus, the trial court did not abuse its discretion in declining to hold a hearing on his request for substitute counsel. Furthermore, McCallie was not entitled under Federal law or New York State law to substitute counsel based upon his allegations. Accordingly, this claim is denied.

## V.    Conclusion

Wellmon McCallie's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is

denied, and the petition is dismissed.  Because McCallie has failed to make a substantial showing

of a denial of a constitutional right, I decline to issue a certificate of appealability. *See* 28 U.S.C.

§ 2253(c)(2).

The Court has considered the claims raised in McCallie's reply briefs and found that they

warrant dismissal as discussed above. Based upon the Court's disposition of these claims, which

were the subject of Respondent's motion to dismiss, the motion to dismiss is denied as moot.

**IT IS SO ORDERED.**

/s/  *Victor E. Bianchini*

_____
        VICTOR E. BIANCHINI
        United States Magistrate Judge

DATED:        May 3, 2011
              Buffalo, New York